Good morning, ladies and gentlemen. We have six cases on our calendar this morning. A case from the Court of Federal Claims concerning procurement, two patent cases, one from the district court, the other from the PTO, three government employee cases, two of which are being submitted on the briefs and will therefore not be argued. First case is ANGELICA TEXTILE SERVICES v. United States, 2011-50-36, Mr. Fuller. Thank you, Your Honor. I'd like to apologize in advance to the court if you have trouble understanding me. I had a bad cold last week and it has since departed, but it unfortunately took with it a good bit of my voice. So if the court has trouble understanding me or if I'm not, further problems, please let me know and I'll be happy to repeat what I said or try to speak more clearly. No, that's fine. Maybe talking will help your voice. I hope so, Your Honor. Your Honors, there are two questions before the court in this matter. First issue is whether or not the plaintiff appellee in this matter, ANGELICA TEXTILE SERVICES, had standing to argue about the violation of law or regulation that concerned it. Second is whether the Court of Federal Claims jurisdiction to award the relief to ANGELICA that it did. And I'll start with the issue of standing. In order to establish standing in a bid protest, party must establish that it is, I'll quote, an actual or prospective bidder and possesses the requisite economic interest. Well, ANGELICA did have a contract, didn't they? They did, Your Honor. And they did have an interim contract. So they didn't just come in from the cold out of nowhere. Absolutely, Your Honor. The issue is, a part of this is, in order to establish prejudice, a protester must show that there was a substantial chance that it would have received the contract award but for the alleged error that it's complaining of. The error that ANGELICA is complaining about is the Department of Veterans Affairs not Before you get to that, maybe you can direct your comments then to this. I've got a concern about standing. I'm a little perplexed because ANGELICA is not a better known business. And it's not on this procurement list. So I have a hard time seeing things. With respect to the award that's at issue here, they weren't eligible for the award under any circumstances, irrespective of whether or not there was a violation here or not. Am I wrong about that? You are not wrong at all, Your Honor. You're absolutely correct. So where does the direct economic injury come from if they were not eligible for competing for the award that is the subject of litigation? Your Honor, the court below found that the direct economic interest came from the ability to compete for a follow-on contract to the larger, longer-term contract that ANGELICA had been performing. This is completely improper ruling. This is a completely incorrect ruling. There has never been any debate about ANGELICA's ability or eligibility for it. You're agreeing with the Court of Claims ruling. Court of Claims said you had standing to pursue it. Right, Your Honor. I'm sorry, I'm disagreeing very much with the Court of Federal Claims. Court of Federal Claims said that they had standing to do it because of this short-term contract. That is absolutely not the case. ANGELICA's standing for such a contract was never an issue at all. Even if the Department of Veterans Affairs had followed the internal guidelines, ANGELICA could not have received a contract award. If the department had followed the guidelines, the contract could have gone to a veteran-owned business of some sort. Had it not followed the guidelines, they could have gone to an agency. I agree with you, Your Honor. I do not understand how the Court found standing here. The Court found it based on a follow-on contract. That has never been an issue. Well, there's some interest there. I mean, they had something to gain or lose, right, on the extension, how long a period of time between the actual award was extended, right? Yes, Your Honor. There was an interest in them holding on to this contract, but that does not establish standing for the long-term follow-on contract. ANGELICA's standing for the interim contract was never an issue. It occurred before there was any set-aside decision made, and therefore, there was nothing that prohibited their eligibility for it. However, folks, who is this committee? Are they part of some agency? Are they part of the executive branch? Your Honor, they're an independent federal agency. The Committee for Purchase for People who are Blind or Disabled. Like the ITC or the SEC? They're an independent executive agency. This is their purpose. They administer the Javits-Wagner-O'Day Act. Perhaps I'll actually give a little sort of overview. You have a committee, which is a federal agency. They administer what is called the AbilityOne program. The AbilityOne program employs individuals who are blind or severely disabled. That program is run by two non-profits that have a nationwide reach. NISH, which works with the severely disabled, and NIB, National Institutes for the Blind, which works with the blind. They have their own NISH. I'm sorry? They have their own NISH. They do indeed, Your Honor, yes. NISH and NIB, in turn, work with hundreds of local non-profits around the United States. Most of them small, community-based non-profits that help fund direct employment for blind and severely disabled individuals. So, no, the contract that they were working with Veterans Affairs to administer would be a long-term follow-on contract, not a short-term contract, which is the contract that the Court of Federal Claims used to establish standing. Therefore- Are these then, I mean, what happens through the AbilityOne procurement and also through, alternatively, through the veterans, these all then become non-compete contracts? There, the, a NISH, if procurement is placed on, or if goods or services are placed on the AbilityOne procurement list, those goods or services can only be provided by a J-WAD non-profit, either NISH or NIB. If they are not placed on the list, then the agency can look at other procurement avenues. They can look at small businesses. They can look at veteran-owned businesses. They can look at AA's. NISH procurements have, by law, the highest priority for services, though. So if any item is on the AbilityOne list, it then must be purchased from the provider that provides those services through the AbilityOne program. Who makes the determination as to whether a contract for goods or services is on the AbilityOne list? By statute, your honor, that decision rests exclusively with the committee. But it seems like there's input from agencies. That's what I was a little unclear about from the record here. Absolutely, your honor. By law, it's solely the responsibility of the committee. In reality, the committee wants to and needs to work closely with agencies in order to ascertain the agency's needs. Wants to understand what the agency needs in order to make sure that it can provide them. This is not a competition process. The committee wants to work with agencies to do this. How does it work as a practical matter? Does an agency go to the committee and say, we have these contracts that we're going to let, we think they are appropriate for the AbilityOne program? Or does the committee go to the agency? How does it work? It can work either way, your honor. In this particular instance, the committee found out about the agency's need through a source of slot notification that the contracting officer had placed in the federal register. The committee then contacted the agency to let the agency know of its ability to perform these services, and essentially looked to talk to the agency about the ability of the agency. So the contracting officer, leaving aside what is contended she did improperly, the contracting officer announces a need for these laundry services. Yes, your honor. And the committee sees that announcement, and it then in turn goes to the agency. Is that what happened here? That's what happened here, yes, your honor. It could also happen in reverse. It could be that the agency does, I'm sorry, that the committee does outreach to agencies. For example, they could go to the Department of Veterans Affairs, or other agencies and say. Now let me, sorry to cut you off, because the time is limited. If a contract is placed, or procurement is placed on the ability one lists, then does NISH go and find someone who qualifies under the program, and then that person enters into a contract with the agency, or is it NISH that enters into the contract? NISH works with hundreds of non-profits around the United States. They wanna make sure they had a non-profit in the area where the services need to be performed in order to enter into the contract. They would want an actual entity to perform. I don't know if the contract's actually between the smaller non-profits that actually performs the work. I believe it is between them and the agency, but I'm not 100% certain on that. It's either between them and the agency,  What about your point on remedy? Yes, your honor. The court of federal claims did not have jurisdiction to award Angelica the relief that it did. Congress has statutorily established method for adding items and deleting them from the ability one procurement list. This is set out in 41 U.S.C. section 47A2, and it says that all additions are to be done in accordance with 5 U.S.C. section 553, and I should point out to the court, it's my understanding in the last few days that this section has been recodified. I understand, I've tried checking on Westlaw, and I've not been able to track it down, but I understand that this section is now 41 U.S.C. section 8501, just to bring that to the attention of the court. But it's not been changed. It is not. No, your honor, it's recodified. Again, by law, these additions and deletions are done in accordance with section 553. This has been construed to mean that challenges to them are also to be done in accordance with the Administrative Procedures Act. The Administrative Procedures Act has its own section for review, has been construed by a number of courts. This is the proper method of challenging them. Now, when there's precedent in this court that's a hold of the- So let me ask you, on this point, assume for the moment the court of federal claims, instead of directing the committee to rescind or delist, assume for the moment the court of federal claims had said instead to the agency, you have to go back and go through the correct process to determine whether this is going to be under the Veterans Program or the AbilityOne Program. And the court had not said anything about delisting the services with the committee. Would that have been relief within the jurisdiction of the court of federal claims? Quite possibly, Your Honor. The problem there is that by statute, the AbilityOne procurement list is a mandatory source of supply. If the item is on the list, the agency does not have discretion as to where they obtain it. They must, by law, obtain it from the provider that is on the list. So even if they did, it might probably, Angelica would probably not see that as a complete remedy. But there is press in this court that is very clear that when Congress prescribes a remedy in detail, it is presumed to be exclusive. Here, that is precisely what Congress did. Congress set out a method in the Jaywatt Act for challenging additions to the list. Angelica could have but did not avail itself to this method. They could have filed an action pursuant to the APA in district court and challenged the soliciting. They did not. The court was quite simply incorrect, assuming that it also had jurisdiction. Would you have made an argument with respect to standing if they had gone into federal district court to argue the APA? I don't believe it would have, Your Honor. This has been litigated in a number of district courts around the country. We have several cases that we cited in our briefing. I'm seeing them in my rebuttal time. I'll simply say also that one of the factors I want to make, this is two other factors, I'm sorry. This is not an instance of repeal by implication, which the Court of Federal Claims said in its opinion. And it's also the issue of prior enactment. This court has held that a later enacted, I'm sorry, a statute dealing with a narrow issue is not subsumed by a later, more generalized, broader statute. This has been my rebuttal time. I will reserve the balance. We will save it for you. Mr. Block. Thank you, Your Honors. I would like to first address the issue of standing. I want to be very clear on the timing here. There was an initial five-year contract, then there was a follow-on six-month extension. The contracts that are at issue are the interim contracts thereafter that fill a gap between the end of the extension and when a new contract would be entered into with a new entity. As for those contracts which were in fact awarded to Angelica after the protest was filed, and after the decision came out, that's what gives Angelica standing because as the incumbent contractor, they were uniquely positioned to bid on those contracts and in fact did so and won those contracts. And the court below properly found that we had demonstrated that we would lose a contract but for the rescinding of a listing on the AbilityOne program. But you don't meet the criteria, do you? Yes, we do. We do because there's nothing in the statute that says what the contract is, okay? When the statute says and the case law says the contract and Judge Leto down below found that we were entitled to add but for the VA's improper action, there would have been a longer period of time to fulfill their requirements to determine whether or not there was a SDVOSB or a VOSB eligible to perform. During that time period, Angelica was positioned to, was a potential bidder, in fact did bid and did win interim contracts. So that is what affords us standing to complain about the VA's improper action. Jeff, do you have a standing question? Yeah, I'm standing. Well, thank you. Thank you. Chuck, let me ask, so we agree here, the Court of Federal Claims said for purposes of the standing analysis, the contract that we look at is the interim contracts rather than the new procurement for follow-on laundry services, correct? They felt that was sufficient to... Now, if one disagrees with that, if the court were to determine that the appropriate contract to look for is the procurement for the laundry services in the Southeast region, does that mean you lose on standing? As a matter of fact... It's interesting because you look at it and you say, okay, Angelica's a large business, it's not a veteran-owned small business and therefore they couldn't possibly get this contract after they adhered to the requirements. But in reality, Angelica actually won that contract. And so in theory, I guess I would agree that we were not eligible, but what they did was they put out a cascading RFK with different requirements at the end of the day. So the bottom line is... Bottom line is Angelica... If one determines that that is the relevant procurement rather than the interim contracts, Angelica loses on standing because there hasn't been any challenge to having that contract be limited to either the AbilityOne program or the veterans program. And it's never been argued that Angelica qualifies under that. It's true. I'm only having difficulty answering you because in reality, Angelica won that contract. But in terms of this case. That's right. And in terms of what happened thereafter, Angelica won the follow-on contract. Now, I would agree that we would not have qualified to win based on our being a service-disabled veteran-owned small business or a veteran-owned small business. Yes. You don't have a contractor? Yes. You mean this didn't go the AbilityOne route or the veterans route? Correct. Well, then why are we here? I don't know. What are we arguing about? I don't know why we're arguing. Just to be clear, are you still in the interim and the follow-on because of this litigation? So the actual contract that was the subject of the dispute here between the list or whatever, that has now been awarded to Angelica? Yes. And what's the duration of this contract? Five years. Does the word move come to mind? It came to my mind. Well, whether or not it's... I mean, so you think that answers the standing question? Well, I... Does that prove that what was at issue here, the contracted issue here is... So it's asking a specific question. I was having difficulty answering a specific question given the facts of this case. No, I understand where you were. So, what did court decide about this case? I also think it was proper. So let me focus on that, okay? Which is that if Angelica lost an opportunity to bid on a contract award of any duration... Okay, so assume for a moment that we disagree with that conclusion. We think it has to only go to a direct economic impact, has to be related to the ultimate contract that's in dispute. Now, if you're saying that the contract that was in dispute in this particular case has now been awarded to you all. Yes. What happened to the other groups? Are they challenging it? Is there some protest? No, Your Honor. I can understand why that's very confusing. Well, so what happens to... I mean, so there's an order out standing by the Court of Federal Claims, I guess, is that mooted too in your view? Now that the contract's been awarded? I mean, the order that the government is challenging. I would say that the circumstances have mooted the order, yes. Could you explain to us how the contract went from being one that was supposed to be awarded to this group, whatever, to, I assume, a general contract in which you competed? I'll do my best. There was a cascading order of preference RFP that was issued. There was a competitive process that ensued. As a result of that... When I say cascading order of preference, I'll be more specific. SDVOSB, VOSB... Is this all stuff that happened after this case? Yes. Okay, so after Court of Claims, there's a new contract? Yes. Do you remember the parties that sent us a letter informing us of this? Your Honor, with all due respect, I didn't particularly want to have an oral argument on this matter today, but I'm here. Well, that doesn't answer the question. No, I get the answer to your question. Yes, of course, that would have been helpful. For my part, I apologize for not doing so. Well, when you're through, we'll see what the government has to say. Yes. So, any more questions on the standing? Move on to jurisdiction. Okay. Now, the agency does not challenge the jurisdiction of the Court of Claims to hear a bid protest concerning the committee. That's on page 6 of the reply brief. And when you consider that in conjunction with what this Court has said, most recently in the Turner Construction case, that's 645 F3rd 1377 at 1388 that was issued in July of this year, you quote the Tucker Act, which exclusively empowers the Court to award any relief that the Court considers proper, including declaratory injunctive relief. And the important part here is, thus, once jurisdiction attaches, the Court of Federal Claims has broad, equitable powers to fashion an appropriate remedy. We give deference to the Court of Federal Claims' decision to grant or deny injunctive relief, only disturbing its decision if it abused its discretion. In this case, there's been no challenge whatsoever to give the... What's the size of that case again? Yes, 645 F3rd 1377, and the specific page number is 1388, that was issued on July 14th, 2011. Let me ask you, to follow up, if I could, the discussion I was having with Mr. Fulton, the committee makes the ultimate decision as to whether something's going to be on the Ability One list, correct? Correct. What exactly... And here it's... Well, the government conceded that the agency, the contracting officer, didn't go through the procedures required under the Veterans Program. What is the precise role, in your view, of the agency vis-à-vis the committee in this situation? It's still a little unclear to me, because it seems that the committee makes the decision, but somehow the agency is a necessary player in the decision process. Absolutely. And I'm glad you asked me that question. The agency, as it did in this case, makes a determination about whether these types of services fit into what is otherwise already on the Ability One list. For example, janitorial services are a big one. Other types of lawn maintenance, things of that nature, have been found to fall in. And there's a category, there's a spreadsheet that you can find on the J-WAD website. So the agency has to determine that this is a proper type of service to be included on the Ability One list. So that's their role. They make the official initial determination. And I heard what Mr. Folk said, which is the committee can do outreach activity. I'm not aware of such outreach activity. I'm aware of an agency going through the process and determining it has enough time, and this is the important part here, has enough time to get it listed on the Ability One procurement list before the procurement is issued. That takes at least six months according to the information found down below. So if it's not on the list by the time that RFP is awarded, by the time the solicitation is awarded, you can't get it from the Ability One list. You have to wait. It's a five-year contract. You have to wait another five years to get it listed on the Ability One list for that particular service. So it's a decision of, one, this is the type of service that should be on the Ability One list, and two, there's the timing, enough timing, sufficient timing to allow it to be placed, to allow the contracting officer to procure it through the Ability One list. What about Mr. Folk's argument that the specific governs over the general? Right. That there isn't a JWAD Act specific procedure? There's absolutely nothing exclusive in the JWAD Act that deals with this type of situation. It is a rule-making entity. It does not have adjudicative power. It is, there's no judicial review process in the JWAD Act. They have no jurisdiction to decide whether or not the VA acted properly or improperly. And it, you know, it relies, its jurisdiction is the fallback APA jurisdiction that comes in when there's no specific judicial procedure written into the Act. There's nothing that, there that precludes jurisdiction from another court. And taking it the other way, there's nothing in the Tucker Act that's amended that precludes the Court of Federal Claims from addressing these types of issues. And given that it was addressed and enacted later, Congress, if it so intended, could have specifically excluded such jurisdiction. It chose not to. And as Judge Leto said below, there's different spheres of influence. As long as you stay in each, it's perfectly okay. And that would be the position I would take. And the cases that were cited by the VA, all of which say this is the exclusive remedy, this is the exclusive way to address this specific issue. And that's just not the case here. Spock, let me just ask you one question. Give me back two minutes for this issue we're discussing. All right, we'll discuss it, Mr. Falk. The Court of Federal Claims decision is in August of 2010? I'm sorry, October 36th of 2010. And when did Angelica receive the new laundry services contract? I don't know the exact date, but in 2011. 2011. So it's after this. Yes. Was it before the briefing in this case? I guess the government's brief was filed April 6th of 2011, and then your brief on June 13th, your response brief, and then the government's reply on July 13th. When was this? In terms of those dates. I'm guessing a little. It may have been during. I don't recall specifically. I can certainly find that out and get back with you a specific date. Anything further, Mr. Falk? No, Your Honor. I'll see you the rest of my time. Thank you. We'll hear some rebuttals from Mr. Falk, who will surely tell us why the government is complaining about the standing of Angelica when they've already received the contract. So, please, Your Honor. Excuse me. First of all, as far as the award date of the contract, I believe that was in October of this year, so relatively recently. I've been trying to track it down. I wanted to be able to tell the court what happened there. After the interim contracts were awarded, the agency was still operating under Judge Leto's injunction. They decided that there was not enough time to comply with the Veterans Benefits Act and also to work with NISH to again get these services placed back on the list. They said there simply wasn't enough time to do that. That is why they went with a long-term contract to Angelica. There were several things I wanted to address that the opposing counsel mentioned. There's something that Congress has not established a specific procedure for review. Congress has established... Before we get off this standing, this mootness standing question, so in the government's view, this case is still a live controversy? Your Honor, there's several things here. First of all, the doctrine of the courts can reach decisions on something that is subject to review yet evading decision. That's the situation we're dealing with here. Bid protests, by their nature, occur because agencies have a pressing need for a good or a service. It's very difficult for one of those to be appealed. We have an opinion here that really makes a huge impact on a lot of small non-profits around the country that really don't have the resources to... that really can be damaged severely by such a ruling. In theory. No, not by this ruling. This ruling only applies to this case, and this case is now moot. So what impact is it going to have? The ruling could have a large impact down the road. Right now, it's conceded that entities can challenge placement on the procurement list through the Administrative Procedures Act... Yeah, okay, but let me stop you just with this. I'm not clear. So the government's answer is because it felt so compelled to have our court address the propriety of what the Court of Federal Claims did here with respect to its authority? That was when we filed the appeal, Your Honor, yes. All right, the thing that doesn't make sense to me then is the government's threshold argument with respect to this case, as I understood it, was standing. In other words, as I understood your position, you shouldn't even go to the merits of this case, court, because there's not even any standing to bring it, which would mean the government was pressing us not to necessarily, if at all, decide this issue, which you're now saying is the be-all and end-all for why we need to be here today, because you need an answer to this question. Am I missing something? I obviously must be missing something. Your Honor, when we filed the case, when we filed the appeal, I should say, in December of last year, we did not know what the future would bring as far as this procurement went. We brought forth all the arguments that we thought were relevant. But there's something called additional authority, or notifying the court of interim acts, which could or might affect what's before us. So I'm not quibbling about what you said a year and a half ago when you didn't know this was happening. I guess I'm wondering what your position is now, why you continue to press this after the rising events. Your Honor, admittedly, we probably should notify the court of this sometime after October, a couple months ago, when we found out that Angelica did receive the Pauline contract. Again, we're talking a month or so ago. But do you understand my question? Your argument to us seemed to be, well, this is a pressing issue because this court needs to review what the court of federal claims said about the authority on the bill. And am I not correct that the government's position here before us was don't address that, just let this case go off on standing? So I guess I'm not buying your answer to why we're actually here. Your Honor, these are arguments in the alternative. We would like to see the court address the merits here. However, we also... I believe that you said in your brief, Mr. Pope, that standing is the evidence. We believe there are two reasons why Angelica should have lost. But why do we decide the standing issue? I mean, why is there any case to decide here? Again, Your Honor, it goes... What's the point at this point? Again, Your Honor, it goes to the fact that if this court, if the opinion of the court of federal claims stands, it causes a great deal of problem to a lot of small entities that are capable of accommodating that. So you want us to say there's no standing here? We'd like to receive... No, you don't want us to say there's no standing. You want us to go to the merits. You want us to say there's no standing. We would like for you to go to the merits. If you don't, there's also standing arguments. What you're saying in your brief... Isn't that different from what you're saying in your brief? In our brief, yes, it is, Your Honor. It could be seen that way. So wait a minute, wait a minute. In the brief, you said... I just want to make sure I understand. In the brief, you said, no standing so you don't get to the merits. Now you're saying you want us to find standing so we can get to the merits. We believe that there's no standing. We also would like the court to get to the merits regardless. We also understand the court may have an agreement on standing. Standing is... Our cases say that standing is the preliminary question. Yes, Your Honor. And so do you want us to say there's no standing here? In the alternative, yes. We would like to see... No, no, no. That's a preliminary question. Our cases say we have to... We do that first, and that's what you asked us in the briefs to do. Are you saying you want us... Do you want us to find standing or no standing? We'd like to find no standing. If you find no standing... Okay, okay. That's the end of the case then. Assuming the court finds that. If the court does not find that, then it's not the end of the case, and there's an issue out here, a great deal of potential harm to a lot of small entities out there. That's if the court finds standing. You started by explaining this by saying there's this theoretical potential harm that's sort of like the case that evades review because it's never capable of deciding it, right? I mean, which is an argument, obviously, you never made to us because we never knew the fact that would have been the predicate for making that argument because you never told us, right? Your Honor, those facts did not establish themselves until about two months ago. We did not know the facts at the time we filed our briefs, no. We did not know how the award would turn. But again, if the court's opinion, the decision below is allowed to stand, it could allow parties essentially two bites at the apple. A party that was dissatisfied with a JWAD listing decision could in turn file an action in district court pursuant to the APA, you pursue that action, and if they're dissatisfied with that, they could potentially file a bid protest with the Court of Federal Claims to further elongate the time that it takes to perform a listing decision. Mr. Folt, you've greatly exceeded your time because of your questions, so we'll terminate the argument and for future reference, the APA is the Administrative Procedure Act. Thank you, Your Honor. We'll take the case under advisement. Thank you, Your Honor. Thank you.